<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| DONTA MCMILLAN, : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> COMM'R OF THE N.J. DEP'T OF : <br> CORRS., et al. : <br> : <br> Defendants. : <br> : | Case No. 3:18-cv-13379-BRM-LHG <br><br> **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is a Motion for Partial Judgment (the "Motion") filed by defendants Commissioner of the New Jersey Department of Corrections, Administrator Jonathan Gramp, Major Daniel Gerdes, Major Tracy Shimis-Kaminsky, Hearing Officer E. Dibenedetto, Hearing Officer D. Hunter, Sgt. J. Brown, Sgt. G. Holman, Sgt. M. Stepniewski, Sgt. Wyche, SCO Officer Young, SCO M. Cirulli (B425), SCO R. Schreck (B703), SCO G. Spinner (B186), SCO C. Coacci (B127), SCO T. Ficarra (B629), SCO C. Platt (B249), SCO A. Vitale (B44), SCO Mitrosky, SCO Titus, SCO Selby, SCO Fournier, and SCO Rauch (collectively, "State Defendants") seeking partial judgment of plaintiff Donta McMillan's ("Plaintiff") Complaint pursuant to Federal Rule of Civil Procedure 12(c). (ECF No. 57.) The Motion is opposed. (ECF No. 59.) Having reviewed the submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause appearing, State Defendants' Motion is **DENIED**.

I.  **BACKGROUND**

A. **Factual Background**

This action arises out of events which occurred during Plaintiff's detention in various state-operated facilities in New Jersey. (ECF No. 1.) Plaintiff, at all times relevant, was a convicted and sentenced state prisoner housed by the New Jersey Department of Corrections. (*Id.* at ¶ 4.) Plaintiff lived at the Albert C. Wagner Youth Correctional Facility ("WYCF") in Bordentown, New Jersey before he was transferred to the New Jersey State Prison ("NJSP") in Trenton, New Jersey. (*Id.*) On September 10, 2016, an inmate at WYCF assaulted a corrections officer. (*Id.* at ¶ 15.) As a result, the prison went on lockdown for two and a half days. (*Id.*) On September 13, 2016, Corrections Officer Young removed Plaintiff from his cell and directed him to retrieve paper and water from the "dugout," even though the only inmates allowed out of their cell during the lockdown were kitchen workers and barbers. (*Id.*)

As Plaintiff was coming upstairs holding the canister of hot water, Corrections Officer M. Cirulli attacked Plaintiff without provocation. (*Id.* at ¶ 16.) As several other defendant officers joined in, they "repeatedly and viciously punched, kicked, and beat [P]laintiff until he could no longer walk and was unconscious." (*Id.* at ¶ 17.) As the defendant officers took Plaintiff to a holding cell, it was readily apparent Plaintiff could not walk. (*Id.* at ¶ 20.) Once Plaintiff regained consciousness, he complained of pain in his ribs, difficulty breathing, and the inability to walk. (*Id.*)

Shortly thereafter, Plaintiff was strip-searched and transferred to the NJSP for a prehearing detention. (*Id.* at ¶ 22.) Plaintiff remained in solitary confinement for approximately three months before he was transferred to administrative segregation, where he spent the majority of the time in his cell for 365 days. (*Id.* at ¶ 24.) The NJSP medical staff defendants "agreed with one another to

minimize [P]laintiff's injuries . . . for the purpose of denying [P]laintiff necessary medical treatment for his serious injuries and to cover up the use of excessive force by the assaulting defendant officers." (*Id.* at ¶ 25.) The unnamed transporting officers, along with Lt. Miller, Lt. Richards, and Sgt. Stephiewski, also conducted a "painful and unwarranted" strip search prior to Plaintiff's transfer to NJSP. (*Id.* at ¶ 26.)

Plaintiff contends he "requested to file an internal complaint against the defendant officers and medical providers for falsifying reports against him, the use of excessive force against him, and the denial of medical treatment." (*Id.* at ¶ 31.) An unidentified major in the FNU and LNU, two unidentified employees of the Special Investigation Division ("SID"), and Sgt. J. Brown were assigned to investigate Plaintiff's claims. (*Id.*) While Plaintiff was in solitary confinement, Sgt. J. Brown and the two employees of the SID met with him to obtain a videotaped statement immediately after the incident. (*Id.* at ¶ 32.) Nonetheless, Plaintiff contends they failed to investigate his claims or ensure he received medical care for his injuries. (*Id.*) He submits they also viewed footage depicting him running away from an officer who was attempting to drag him back into the dugout. (*Id.*) Plaintiff alleges he did not disobey any order to "give up his hands" as the officers beat and dragged him until he was unconscious and unable to walk. (*Id.*) Plaintiff also contends a major within the FNU and LNU reviewed the defendant officers' reports of the incident, but failed to launch an investigation. (*Id.* at ¶ 33.) Plaintiff submits the unidentified major approved his solitary confinement placement without providing any medical evaluation. (*Id.*) Furthermore, Plaintiff contends the complaints he submitted to the Commissioner and Administrators Gramp and Johnson were ignored. (*Id.* at ¶ 34.)

On September 13, 2016, Plaintiff was charged with punching and threatening to cause bodily harm to SCO M. Cirulli. (*Id.* at ¶ 27.) Additionally, Plaintiff was charged with refusing to

obey a staff member's order, as well as disrupting or interfering with the security of a correctional facility. (*Id.*) On September 23, 2016, Plaintiff was found guilty of all charges at a disciplinary hearing, despite his denial of assaulting SCO M. Cirulli. (*Id.* at ¶ 28.) Plaintiff contends defendant D. Hunter refused to allow him to present witnesses and conduct cross-examination. (*Id.*) Plaintiff was sanctioned to 365 days of administrative segregation, 365 days loss of commutation, and thirty days loss of recreation. (*Id.*) Nevertheless, he remained in solitary confinement for at least three months. (*Id.*)

The Commissioner and Administrators Johnson and Gramp upheld the decision and sanctions. (*Id.* at 29.) Plaintiff subsequently filed a *pro se* notice of appeal to the New Jersey Appellate Division[1]; however, the Commissioner's motion to remand to the administrative level was granted before the matter was decided by the state court. (*Id.* at 30.) The Commissioner conceded Plaintiff was denied his right to present witnesses and cross examine witnesses. (*Id.* at ¶ 34.) A second disciplinary hearing was convened, which resulted in a sanction of sixty days lost of "comp time" rather than the 365-day loss imposed after the first disciplinary hearing. (*Id.* at ¶¶ 34-35.) Although it is unclear whether this occurred before the first or second disciplinary hearing, Plaintiff claims defendant Dibenedetto advised him "the only way for [him] to secure his release, was that he rescind his request to call witnesses and for cross-examination and that DiBenedetto find him guilty, over his denial, of assaulting Cirulli based on the false reports submitted by the defendant officers." (*Id.* at ¶ 36.) Nonetheless, Plaintiff did not make any admissions of guilt. (*Id.*)

---

[1] Plaintiff also submits he "had to move before the Appellate Division to obtain the video of the defendant officers beating [him]." (*Id.*) It is unclear whether he actually obtained the video.

### B. Procedural Background

Almost two years after the aforementioned events, Plaintiff filed his initial complaint in this Court on August 29, 2018. (ECF No. 1.) Plaintiff alleges federal violations under (i) 42 U.S.C. § 1983; (ii) the New Jersey Civil Rights Act; and (iii) tort claims under New Jersey law. Plaintiff seeks compensatory and punitive damages along with court costs and attorneys' fees. (*Id.*) In addition to the previously named defendants, Plaintiff also raised claims against various medical professionals whom he alleged failed to provide adequate care after the assault. (*Id.*) On February 15, 2019, the medical professional defendants filed an opposed motion to dismiss for failure to state a claim, which the Court granted in part and denied in part on September 30, 2019. (ECF Nos. 44, 50-51.) Also on February 15, 2019, State Defendants filed an answer to the complaint. (ECF No. 46.) The medical professional defendants subsequently filed an answer to the complaint on October 10, 2019. (ECF No. 53.) On January 27, 2020, the parties entered a consent order dismissing SCO P. Keesser from the complaint with prejudice. (ECF No. 62.)

State Defendants now move for partial judgment pursuant to Federal Rule of Civil Procedure 12(c) (ECF No. 57), to which Plaintiff filed a response in opposition. (ECF No. 59.)

## II.   LEGAL STANDARD

### A. Motion for Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) states that "[a]fter the pleadings are closed−but early enough not to delay trial−a party may move for judgment on the pleadings."

"The difference between Rules 12(b)(6) and 12(c) is purely procedural as 12(c) requests for dismissal are governed by the same standards as 12(b)(6) motions." *Glob. Naps, Inc. v. Bell Atl.-N.J., Inc.*, 287 F. Supp. 2d 532, 539 (D.N.J. 2003) (citing *Turbe v. Gov't of the V.I.*, 938 F.2d 427, 428 (3d Cir. 1991)). As with a Rule 12(b)(6) motion, in deciding a 12(c) motion, the court

must "view the facts alleged in the pleadings and the inferences to be drawn from those facts in the light most favorable to the plaintiff." *Barnard v. Lackawanna Cty.*, 696 F. App'x 59, 61 (3d Cir. 2017) (internal quotation marks and citations omitted). Under this standard, the court may only consider well-pleaded factual allegations, rather than conclusory statements. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

The Third Circuit has explained that a court may only grant a motion for judgment on the pleadings if the moving party "clearly establishes that no material issue of fact remains to be resolved and that [the movant] is entitled to judgment as a matter of law." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (quoting *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290-91 (3d Cir. 1988)) (internal quotation marks and citations omitted).

### B. Section 1983 Action

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Therefore, to state a claim for relief under Section 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

### III. DECISION

#### A. Eleventh Amendment

##### 1. Immunity for State Officials

State Defendants move for dismissal of all the claims against them in their official capacity. (ECF No. 57 at 8-12.) They argue the Eleventh Amendment bars such an action against state officials.

The Eleventh Amendment bars an action against the state regardless of whether the plaintiff seeks legal or equitable relief. *See Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). Additionally, the Eleventh Amendment extends immunity to suits against state officials in their official capacity because "a suit against a state official in his or her official capacity is . . . no different from a suit against the State itself." *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989).

Here, however, Plaintiff's complaint does not appear to sue any State Defendants in their official capacities. Plaintiff also confirms this in his reply brief. (ECF No. 59 at 8-9.) Because the complaint does not raise any claims against State Defendants in their official capacities, State Defendants' motion for partial judgment is denied to the extent it seeks dismissal of claims against all moving defendants in their official capacities.

##### 2. Forum

State Defendants next contend Plaintiff's second cause of action raising due process claims under both the Fourteenth Amendment and the New Jersey Civil Rights Act ("NJCRA") should be brought in New Jersey state court. (ECF No. 57 at 12-14.) They argue New Jersey state law provides the Appellate Division with sole jurisdiction over appeals of agency decisions. (*Id.* at 13.)

State Defendants further allege Plaintiff characterized his claim as a constitutional due process issue in order to circumvent litigating the matter in the state court. (*Id.* at 13-14.)

Although State Defendants characterize the prison disciplinary proceeding as an "agency decision," which must be appealed to the New Jersey Appellate Division, Section 1983 only requires a prisoner to appeal the disciplinary hearing decision to the warden or other prison official. The Prison Litigation Reform Act (PLRA) mandates that a prisoner exhaust any available administrative remedies before bringing a § 1983 suit in federal court. *See* 42 U.S.C. § 1997e(a); *Spruill v. Gillis,* 372 F.3d 218 (3d Cir.2004).

The record is unclear whether Plaintiff appealed the final disciplinary hearing decision to the warden or another prison official. Therefore, the Court cannot determine whether Plaintiff exhausted his prison remedies at this time. Nonetheless, State Defendants' assertion that Plaintiff is required to appeal the prison disciplinary decision to the Appellate Division is incorrect. State Defendants' motion for judgment on the pleadings on the basis of Plaintiff's failure to appeal to the Appellate Division is denied.

### B. Personal Involvement by the Commissioner

State Defendants next contend Plaintiff's claims against the Commissioner must be dismissed for lack of personal involvement. (ECF No. 57 at 14-18.)

"Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Rode v. Dellarcriprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted).

Plaintiff submits, *inter alia*, "[d]efendant Commissioner conceded that plaintiff was denied due process with respect to plaintiff's first administrative hearing . . . ." (ECF No. 1 at ¶ 49.)

8

Plaintiff also argues "Commissioner, Administrator Gramp, and hearing officer DiBenedetto[] further denied [P]laintiff his right to a polygraph test . . . . " (*Id.*) Based on the standard set forth in *Rode*, Plaintiff's complaint has alleged the necessary level of personal involvement by the Commissioner for the complaint to proceed beyond this stage.

Accordingly, to the extent the defendants seek judgment on Plaintiff's claim against the Commissioner for lack of personal involvement, the motion is denied.

### C. Due Process Related to Plaintiff's Disciplinary Hearings

State Defendants next move to dismiss Plaintiff's claim alleging his due process rights were violated during the disciplinary hearing proceedings. (ECF No. 57 at 18-21.) They submit "the NJCRA does not provide claimants a private right of action for deprivations of procedural rights." (*Id.* at 18-19.)

"[T]he NJCRA and § 1983, when pled together, are analyzed under the same standard." *Hottenstein v. City of Sea Isle City*, 977 F. Supp. 2d 353, 365 (2013). In order for a plaintiff to state a claim for either procedural or substantive due process, he must allege a protectable interest under the Fourteenth Amendment. *Harley v. City of N.J. City*, 2017 WL 2779466 at *10 (D.N.J. June 27, 2017).

Plaintiff submits he "was finally given a 60 day suspended loss of 365 days comp time." (ECF No. 1 at ¶ 54.) Plaintiff states his release date was consequently postponed by five months as a result of the loss of comp time. (*Id.* at ¶ 55.) Although Plaintiff does not elaborate on what "comp time" entails, he contends the loss of comp time delayed his release from incarceration. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974) (prison inmate's loss of good-time credits is a liberty interest entitling him to the Fourteenth Amendment's due process requirements).

Consequently, because Plaintiff has adequately pled a Fourteenth Amendment due process claim, his parallel claim under the NJCRA stands. Therefore, State Defendants' motion to dismiss Plaintiff's due process claim is denied.

### D. Mandatory Notice Provisions of the New Jersey Tort Claims Act ("TCA")

Finally, State Defendants move for judgment on the pleadings on Plaintiff's intentional infliction of emotional distress claim because he failed to comply with the notice provision of the TCA. (ECF No. 57 at 27-30.)

"The TCA sets forth a procedural framework for making claims against public entities and public employees. *See* N.J.S.A. 59:8–3. The TCA was enacted with the purpose of limiting a public entity's or a public employee's liability in certain situations." *Davis v. Twp. of Paulsboro*, 371 F. Supp. 611, 617 (2005) (citations omitted).

Under the relevant statute, a notice must contain:

> (a) The name and post office address of the claimant;
> (b) The post-office address to which the person presenting the claim desires notices to be sent;
> (c) The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted;
> (d) A general description of the injury, damage or loss incurred so far as it may be known at the time of presentation of the claim;
> (e) The name or names or the public entity, employee or employees causing the injury, damage or loss, if known; and
> (f) The amount claimed as of the date of presentation of the claim, including the estimated amount of any prospective injury damage, or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of computation of the amount claimed.

N.J. Stat. Ann. 59:8–4.

State Defendants contend while Plaintiff complied with the TCA's ninety-day statutory window, the notice "omits any description of the injuries suffered by Plaintiff as a result thereof."

(ECF No. 57 at 23.) In turn, Plaintiff alleges the contested matter should not be resolved at this stage of the litigation. (ECF No. 59 at 13.)

The Court cannot decide whether the TCA notice requirements have been adequately satisfied at this juncture. Even if the Court were to consider extrinsic documents, *see In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997), for purposes of deciding this particular issue, the parties have not supplied a copy of Plaintiff's notice of claim.

Therefore, the Court will allow Plaintiff's intentional infliction of emotional distress claim to proceed. State Defendants' motion to dismiss the intentional infliction of emotional distress is denied.

### IV.  CONCLUSION

For the foregoing reasons, State Defendants' motion for partial judgment is **DENIED** in its entirety. An appropriate order will follow.

**Date**:  August 28, 2020             */s/ Brian R. Martinotti*
                                       **HON. BRIAN R. MARTINOTTI**
                                       **UNITED STATES DISTRICT JUDGE**